Brent H. Blakely (SBN 157292)
bblakely@blakelylawgroup.com
Mark S. Zhai (SBN 287988)
mzhai@blakelylawgroup.com
**BLAKELY LAW GROUP**
1334 Parkview Avenue, Suite 280
Manhattan Beach, California 90266
Telephone: (310) 546-7400
Facsimile: (310) 546-7401

*Attorneys for Plaintiff*
*Greater Oceans, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| GREATER OCEANS, INC., a California Corporation, | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES, EQUITABLE RELIEF FOR:** |
| v. | **1. MISAPPROPRIATION OF TRADE SECRETS UNDER DTSA (18 U.S.C. § 1836 *et seq.*)** |
| ERIC THORSTENSON, an individual; and DOES 1-10, inclusive, | **2. MISAPPROPRIATION OF TRADE SECRETS UNDER CUTSA (CAL. CIV. CODE § 3426.1 *et seq.*)** |
| Defendants. | **3. BREACH OF FIDUCIARY DUTY AND DUTY OF LOYALTY** |
|  | **4. BREACH OF CONTRACT** |
|  | **5. TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS** |
|  | **6. UNFAIR COMPETITION IN VIOLATION OF CAL. BUS. & PROF. CODE, § 17200 *et seq.*** |
|  | **JURY TRIAL DEMANDED** |

Plaintiff Greater Oceans, Inc. d/b/a/ Third Eye ("Greater Oceans" or "Plaintiff") for its Complaint against Defendants Eric Thorstenson ("Thorstenson") and DOES 1-10 (collectively "Defendants") alleges as follows:

## PRELIMINARY STATEMENT

1.     This action arises out of Defendants' complicit and unlawful misappropriation of Plaintiff's valuable trade secrets and intentionally interference with Plaintiff's contractual relationships in order to steal Greater Oceans' customers and intellectual property, causing Greater Oceans to suffer millions in damages.

2.     As set forth in detail below, upon information and belief, Defendant Thorstenson stole Plaintiff's valuable trade secrets while working as a consultant to Greater Oceans then intentionally sabotaged hundreds of thousands of dollars' worth of Plaintiff's contracts out of greed. Upon information and belief, Thorstenson used Plaintiff's trade secrets to steal Greater Oceans' customers, vendors, and partners, including DOES 1-10, then used the trade secrets to unlawfully compete against Greater Oceans either on his own or together with DOES 1-10.

3.     Upon information and belief, Defendants, either acting separately or in concert with one another, used and are currently using Greater Oceans' trade secret information unlawfully, including unauthorized disclosure of trade secret information that once publicly known, will cause irreparable harm to Greater Oceans.

4.     Greater Oceans brings this action to stop Defendants' unlawful conduct and asserts claims against Defendants for: (i) misappropriation of trade secrets under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*.; (ii) misappropriation of trade secrets under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code. 3426.1 *et seq*.; (iii) Breach of Fiduciary Duty and the Duty of Loyalty; (iv) Breach of Contract; (v) Tortious Interference with Contractual Relations; and (vi) Unfair Competition in Violation of Cal. Bus. & Prof. Code, § 17200 *et seq.*

5.     Greater Oceans seeks injunctive relief against Defendants, compensatory and exemplary damages, and an award of its attorneys' fees and costs.

1

## **THE PARTIES**

2      6.      Plaintiff Greater Oceans, Inc. ("Greater Oceans" or "Plaintiff") is a

3 corporation duly organized and existing under the laws of the State of California, with

4 an office and principal place of business located at 33061 Santiago Drive, Dana Point,

5 California 92629.

6      7.      Upon information and belief, Defendant Eric Thorstenson ("Thorstenson")

7 is an individual residing at 5648 Hamill Ave, San Diego, California 92120.

8      8.      Upon information and belief, together with Thorstenson, other individuals

9 and entities currently named as DOES 1-10 are responsible for one or more of the

10 wrongful acts or omissions giving rise to the claims alleged herein, and that at all

11 relevant times, Thorstenson and each one of DOES 1-10 served as an agent of the others

12 and were acting within the course and scope of said agency.  These other individuals

13 and entities are fictitiously named DOES 1-10 because their true names and capacities

14 are currently unknown, but Plaintiff will amend this Complaint upon ascertaining the

15 true names and capacities of DOES 1-10.

16

## **JURISDICTION AND VENUE**

17      9.      This Court has subject matter jurisdiction over Greater Oceans' claims

18 pursuant to 28 U.S.C. § 1331 and the trade secret laws of the United States, 18 U.S.C.

19 § 1836 and 1839 *et seq*., and the Court possesses supplemental jurisdiction over Greater

20 Oceans' state law claims under 28 U.S.C. § 1367(a) because Greater Oceans' federal

21 and state law claims derive from a common nucleus of operative fact.

22      10.      This Court has personal jurisdiction over Thorstenson because, at relevant

23 times, Thorstenson resided in California, and over all Defendants because the acts or

24 omissions giving rise to Plaintiff's claims, including but not limited to the

25 misappropriation of Greater Oceans' trade secret information, interference with Greater

26 Oceans' contractual relations, and breach of contracts with and/or duties owed to

27 Greater Oceans occurred in California.

28      11.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) at least

because a substantial part of the acts or omissions giving rise to Greater Oceans' claims occurred in this judicial district.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

**A.    Greater Oceans and its Relationship with Thorstenson**

12.    The story of Greater Oceans begins with its founder Jeff Hornbaker ("Mr. Hornbaker"), one of the most published and renowned surf and ocean photographers in the world.  For over thirty-eight (38) years, Mr. Hornbaker has shaped the creative direction of surf brands such as Rip Curl, OP, O'Neill, and Arnett, including over twenty-five (25) years of exclusive marketing and visual branding work for Quiksilver, Inc. ("Quiksilver"), the largest surf apparel and water/board sports company in the world by revenue.

13.    Starting in or around 2015, Quiksilver began exploring an idea for a new safety product—later named the "Airlift" inflatable vest—that, when activated, inflates to bring the wearer to the ocean surface even in the most intense ocean conditions and largest waves.[1]  The final Airlift vest on the market today was developed by Quiksilver in collaboration with Aqua Lung, a manufacturer of scuba and diving equipment.  Mr. Hornbaker was responsible for developing marketing materials for the Airlift vest.

14.    While working on photography and marketing materials for the Airlift vest, Mr. Hornbaker began discussing various ideas for new water safety products with Thorstenson, an Aqua Lung employee at the time.  After bouncing ideas back-and-forth, Mr. Hornbaker and Thorstenson also discussed the possibility of starting a new business venture in order to develop and market a new water safety platform as well as other surf and apnea diving related products.

15.    In or around May 2019, Mr. Hornbaker and Thorstenson decided to move forward with the new business venture to develop and market the new water safety

---

[1] Additional details, pictures, and videos of the Airlift vest are available on Quiksilver's website at www.quiksilver.com/highline-pro-airlift-vest/

platform, as well as other products.  Although they had initially contemplated forming Greater Oceans as a partnership, Thorstenson was in the middle of a divorce at the time and told Mr. Hornbaker on numerous occasions that he did not want his wife to have any claim to the business.  For example, on June 4, 2019, Thorstenson sent an email to his personal divorce attorney and Greater Oceans' business attorneys in which he expressly states his desire "for keeping my future EX-wife Lynne 100% out of our new Third Eye business start up."

16.     Whether motivated by his divorce or simple because he lacked capital to contribute, Thorstenson insisted on being paid by Greater Oceans as an independent consultant in lieu of equity and entered into at least three (3) valid and binding contracts with Great Oceans and/or Mr. Hornbaker setting forth the terms of the consulting arrangement.

17.     Attached as **Exhibit A** is a true and correct copy of an "Independent Consultant Agreement" between Thorstenson and Great Oceans (the "IC Agreement"), Although the face of the IC Agreement indicates an Effective Date of June 4, 2019, it was actually executed on or around July 9, 2019 then backdated by Thorstenson, apparently for one reason or another related to his divorce proceedings.  In pertinent part, the IC Agreement provides that "Consultant [Thorstenson] will provide services as an Independent Contractor to Client [Great Oceans] for the development of certain products and services which will be solely owned by Client."

18.     Attached as **Exhibit B** is a true and correct copy of another "Consulting Agreement" entered into by and between Thorstenson and Great Oceans (the "Consulting Agreement").  Although the face of the Consulting Agreement indicates it was made and entered into as of May 28, 2019, it was actually executed in late August or early September of 2019.  The handwritten May 28, 2019 date was added by Thorstenson, who again insisted on backdating it for his divorce proceedings.

19.     Attached as **Exhibit C** is a true and correct copy of the "Intellectual Property Assignment" executed by Thorstenson on February 18, 2020 (the "IP

Assignment").  In pertinent part, the IP Assignment assigns "the entire right, title and interest in the Invention," defined as "all proprietary and intellectual property rights, including copyrights and patents, in the concepts and technologies known and described as the '*Inflatable Water Safety Harness With Load Bearing Structure*,'" and specifically "any patent application rights, potential patent rights, copyrights, and trade secrets relating to the Invention" to Greater Oceans, Inc.

### B.   Greater Oceans' Confidential Trade Secret Information

20.   As a photographer, Mr. Hornbaker has long understood the value of one's ideas, including Greater Oceans' confidential trade secret information regarding: (i) proprietary products and technical know-how associated with its intellectual property; (ii) business contacts established by Mr. Hornbaker over three decades of working within the industry; (iii) terms of Greater Oceans' exclusive contracts with its suppliers, vendors, partners, and customers; and (iv) Greater Oceans' detailed business and marketing proposals.

21.   Mr. Hornbaker also knew that in order for the business to succeed, Greater Oceans had to protect its confidential business information.  This is precisely the reason that: (i) the IC Agreement clearly states that "***products and services which will be solely owned by Client***"; (ii) the Consulting Agreement includes an entire section regarding "***the parties' confidentiality obligations, Company's ownership of inventions***"; and (iii) the IP Assignment is not limited to patent rights and expressly identifies "ownership of all proprietary rights, title and interest in the Invention, including, but not limited to . . . ***trade secrets relating to the Invention***."

22.   Moreover, the confidentiality obligations under the Consulting Agreement remain in effect even after termination of the agreement, specifically: "termination of this Agreement shall not relieve either party of its obligations that are intended to survive the termination of this Agreement . . . nor shall any such termination relieve either party from any liability arising from any breach of this Agreement."  This never-ending prohibition against disclosure of Greater Oceans' proprietary trade secret

information highlights the enormous value of Greater Oceans' trade secret information.

23.    Greater Oceans did not limit its efforts to protect its confidential trade secret information to Thorstenson.  For example, attached as **Exhibit D** is a true and correct copy of an "Independent Consult Agreement" entered into by and between Great Oceans and Capewell Aerial Systems LLC ("Capewell"), made effective as of May 9, 2019 (the "Capewell IC Agreement").  In pertinent part, the Capewell IC Agreement provides that:

> (a) Each party, during the Term, will have access to and become familiar with various trade secrets and confidential information of the other party and its affiliates, including without limitation, financial, operational and development information, employee data, vendor, client and supplier information, designs, intellectual property, technical information, samples and prototypes, products, and services (all of such items contained in any tangible or electronic form herein referred to as the "Confidential Information").
>
> (c) The receiving party shall hold in strict confidence and not disclose any of the disclosing party's Confidential Information, directly or indirectly, nor use the disclosing party's Confidential Information in any way, either during the Term or at any time thereafter, except as required in the course of the receiving party's performance under this Agreement or as required by law. All Confidential Information whether prepared by the disclosing party or otherwise coming into receiving party's possession, shall remain the exclusive property of the disclosing party. Upon termination of this Agreement, all Confidential Information of the disclosing party in the receiving party's custody or control shall be immediately returned to the disclosing party, and the receiving party shall destroy all records, notes, compilations and other documentation (on all forms of media) that in any way refer to, relate to or contain Confidential Information.

24.    After Thorstenson terminated his agreement and business relationship with Greater Oceans, Greater Oceans immediately took steps to maintain the confidentiality of its trade secrets.  For example, Mr. Hornbaker contacted the CEO of Capewell, John

1  Marcaccio, to request the return of a Greater Oceans' prototype product incorporating
2  its trade secrets, beginning with a polite email sent on May 27, 2020 that included a
3  reminder that "Greater Oceans, Inc. / Third Eye is the sole owner of the SURF/RESCUE
4  Safety Vest IP Rights and Patented Technology."  Mr. Hornbaker followed up several
5  times, even at one point ***demanding*** return of the prototype otherwise Capewell would
6  be drawn into "anticipated litigation."

7      **C.   Defendants' Theft and Unauthorized Use of Plaintiff's Trade Secrets**

8      25.    Greater Oceans developed, through much effort and expense, information
9  of a highly sensitive and confidential nature concerning its pricing, margins, customers,
10 operations, strategic plans, and products.  This information allowed Greater Oceans to
11 obtain an advantage over its competitors and constitutes the company's trade secrets.

12     26.    Greater Oceans' trade secrets include Thorstenson's contributions in
13 developing certain products while serving as a consultant under the various agreements
14 set forth above.  Greater Oceans contracted and paid Thorstenson for ownership of any
15 products Thorstenson worked on, including "ownership of all proprietary rights, title
16 and interest in the Invention, including, but not limited to . . . ***trade secrets***."

17     27.    Greater Oceans also allowed Thorstenson to access Greater Oceans' trade
18 secrets that Thorstenson had no involvement in creating, including technical
19 information and know-how on proprietary products developed by Mr. Hornbaker and
20 others working for or at the direction of Greater Oceans; Mr. Hornbaker's business
21 contacts established over three decades of working within the industry; Greater Oceans'
22 exclusive contracts with its suppliers, vendors, partners, and customers; and Greater
23 Oceans' detailed business and marketing proposals pertaining to pricing, margins,
24 customers, manufacturing, and operations. All this information was made available to
25 Thorstenson solely on a confidential basis and only to further Greater Oceans' business
26 goals.  Competitors having access to Greater Oceans' trade secret information would
27 easily be able to develop the same products as Greater Oceans at a fraction of the cost
28 and time, then undercut Greater Oceans' pricing and steal its customers.

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES, EQUITABLE RELIEF**

28.    By March 2020, Greater Oceans had finalized several product designs and received commitments on proposals from various vendors, manufacturers, and customers. Around the same time period, Thorstenson began acting strangely, culminating in a profanity-laced call to Mr. Hornbaker on April 8, 2020.  Later that same day, Thorstenson sent Mr. Hornbaker a follow-up email indicating that he was terminating the Consulting Agreement with Greater Oceans and ending their business relationship.  In particular, Thorstenson's email states that "My choice is to no longer be an indebted task master to any one company, unless it's my company, or any one person, unless it's me . . . *I am looking out for my best interest* these days without having to rely on anyone . . ."

29.    On May 11, 2020, after over a month of dead silence, Thorstenson sent Mr. Hornbaker his "Third Eye Dissolution Proposal," in which Thorstenson falsely claims that he "was forced to leave the Company" and that he "need[ed] to be compensated." Although he possessed no ownership rights in Greater Oceans' contracts, products, and valuable intellectual property, Thorstenson brazenly claimed that all these assets belonged to him.

30.    Upon information and belief, Thorstenson intentionally misappropriated Greater Oceans' confidential, proprietary, and trade secret information consisting and/or relating to at least the items identified in the "Third Eye Dissolution Proposal" that he falsely claimed to belong to him, including: design, development, and technical information, product samples, supplier and manufacturer contacts, foundational business ideas and concepts, directional marketing plans, product endorsements, new fin and dive mask products, exclusively use of certain molds in manufacturing, professional business models, catalogs, rescue and surf vest product designs and know-how, and pending patent applications.

31.    The information, documents, and products identified herein constitute, incorporate, utilize, or were created with Greater Oceans' confidential, proprietary, and trade secret information, and have independent economic value because they were not

1    known to or reasonably available through lawful means to competitors.

2        32.    Such information, documents, and products are normally only used in good

3    faith for the implementation and operation of Greater Oceans' business and would give

4    a competitor—particularly a start-up competitor with minimal resources—an unfair

5    advantage in competing with Greater Oceans. Upon information and belief,

6    Thorstenson misappropriated such information, documents, and products in order to

7    unfairly compete against Greater Oceans. Upon information and belief, Thorstenson

8    used and is continuing to use Greater Oceans' trade secret information without

9    authorization to create the same products offered by Greater Oceans and market such

10   products to Greater Oceans' customers using Greater Oceans' contacts and proposals.

11       **D.    Thorstenson Intentional Sabotaged Plaintiff's Contractual Relations**

12       33.    Upon information and belief, Thorstenson, true to his word, in "looking

13   out for [his] best interests," stole Greater Oceans' trade secret information in order to

14   unfairly compete with Greater Oceans then sabotaged Greater Oceans' contractual

15   relationships for his own monetary gain.

16       34.    In or around March 2020, at Capewell's request, Greater Oceans prepared

17   a proposal to develop and manufacture a new EBS product exclusively for Capewell.

18   On April 2, 2020, Greater Oceans sent an invoice to Capewell for $5,000, which

19   Capewell had agreed to pay for Greater Oceans' proposal. To date, Capewell has not

20   paid Greater Oceans' invoice. Upon information and belief, prior to terminating the

21   Consulting Agreement with Greater Oceans and ending their business relationship,

22   Thorstenson arranged a secret meeting with CEO of Capewell, John Marcaccio on April

23   7 or 8, 2020. Upon information and belief, Thorstenson offered and came to an

24   agreement with Capewell to develop the new EBS product and Greater Oceans'

25   innovative rescue vest for Capewell without Greater Oceans' involvement. Upon

26   information and belief, Thorstenson intentionally sabotaged the existing contractual

27   relations between Capewell and Greater Oceans in order to reap the monetary benefits

28   for himself.

35.     From late 2019 to early 2020, Greater Oceans also worked with a supplier, Cathay Consolidated, Inc. ("Cathay") to manufacture Greater Oceans' rescue vest products, including a firm order for (22) "golden samples" (*i.e.*, production-ready).  On April 5, 2020, while still waiting on delivery of the golden samples, Greater Oceans issued another purchase order to Cathay for the manufacturer of (300) production-ready rescue vest products to be delivered by October 2020, at a total cost of over $50,000.  On May 14, 2020, Mr. Hornbaker asked Cathay to confirm receipt of Greater Oceans' payment for the golden samples and that the production timeline was proceeding as planned.  On May 15, 2020, Cathay responded that they did receive Greater Oceans' payment, but Thorstenson had cancelled Greater Oceans' order for the (22) golden samples.  Thorstenson canceled the order without Greater Oceans' authorization and behind Mr. Hornbaker's back.  Upon information and belief, Thorstenson did so nearly a month after he terminated the Consulting Agreement and ended his business relationship with Greater Oceans.  Upon information and belief, Thorstenson canceled Greater Oceans' order in order to sabotage the contractual relations between Greater Oceans and Cathay, which also caused Cathey to put on hold Greater Oceans' order for (300) production-ready rescue vest products.

36.     In March 2020, Greater Oceans and one of its suppliers, QBAS, came to an agreement for QBAS to create tooling and molds for new mask and fin products developed by Greater Oceans, including confidential payment terms exclusive to Greater Oceans.  Upon information and belief, on April 10, 2020, Thorstenson contacted QBAS, one of Greater Oceans' suppliers, and again attempted to sabotage or undermine the personal and contractual relationships between QBAS and Greater Oceans by informing QBAS that he was no longer involved in Greater Oceans and as a result, the company had become "unstable."  Upon information and belief, Thorstenson convinced QBAS to revoke their agreement with Greater Oceans to produce certain products and/or molds, leading to QBAS to cancel Greater Oceans' pending order due to their "evaluation of the company stability."

37.    Upon information and belief, on or around April 8, 2020, Thorstenson contacted several "Brand Ambassadors" of Greater Oceans, including athletes sponsored by Greater Oceans and attempted to sabotage their personal and contractual relations with Greater Oceans by falsely informing them that Mr. Hornbaker had quit the company and was "no longer in the picture."

38.    The full extent of Thorstenson's betrayal, including the involvement of DOES 1-10, can only be determined through discovery.  Upon information and belief, however, Defendants have developed the exact same product offerings as Greater Oceans with no lead time, when in contrast, it took Greater Oceans at least a year to design these products, refine proposals, pricing, contracts, and develop relationships with vendors, donors, and customers. Without Greater Oceans' trade secret information, it would be a miracle for Defendants to independently design and develop overnight the exact same products that took Greater Oceans more than a year to create.

39.    Upon information and belief, Thorstenson covertly hid his true intentions in order to steal confidential trade secret information from Greater Oceans, then sabotaged Greater Oceans' contractual relations with its customers in order to usurp Greater Oceans' position in the market and unlawfully take Greater Oceans' profits for his own.  Furthermore, upon information and belief, Defendants have also used and are continuing to use Greater Oceans' trade secret information to usurp Greater Oceans' position in the market and unlawfully take Greater Oceans' profits for their own.

40.    Upon information and belief, Defendants unlawfully used Greater Oceans' confidential trade secret information to compete with Greater Oceans, when they could not have developed the same products without Greater Oceans' trade secret information. Upon information and belief, by using Greater Oceans' trade secret information, Defendants have unlawfully profited at Greater Oceans' expense and caused irreparable damage to Greater Oceans.

## FIRST CLAIM FOR RELIEF

**(Misappropriation of Trade Secrets Under the DTSA, 18 U.S.C. § 1836 *et seq.*)**

41.     Plaintiff incorporates by reference and re-alleges each and every one of the preceding paragraphs as though fully set forth herein.

42.     Greater Oceans owns and possesses certain confidential, proprietary and trade secret information, including, but not limited to customer contracts and pricing data, product protocols, and strategic plans.

43.     This confidential, proprietary, and trade secret information relates to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped and ordered in, interstate commerce by Plaintiff.

44.     This confidential, proprietary, and trade secret information derives independent economic value, both actual and potential, from not being generally known to others who could obtain economic value from its disclosure or use.

45.     Thorstenson misappropriated Greater Oceans' trade secret information in the improper and unlawful manner as alleged herein, then further misappropriated the trade secret information by using it in direct competition with Greater Oceans and by disclosing Greater Oceans' trade secret information to DOES 1-10, including Greater Oceans' vendors, suppliers, partners, and customers.

46.     Defendants misappropriated Greater Oceans' trade secret information by acquiring it from Thorstenson either knowing or having reason to know Thorstenson acquired such information unlawfully and by improper means, and then using and disclosing Greater Oceans' trade secret information to directly compete against Greater Oceans. Defendants' ability to create competing products with little to no lead time is solely due to the theft and use of Greater Oceans' trade secret information.

47.     As the direct and proximate result of Defendants' conduct as alleged herein, Greater Oceans has suffered damages in an amount to be proven at trial, at least in excess of $400,000.00 and more likely in the millions.

48.     Defendants' misappropriation of Greater Oceans' trade secret information was willful and malicious, further entitling Greater Oceans to recover exemplary damages and its attorneys' fees and costs.

49.     Defendants' use of Greater Oceans' trade secret information is ongoing and unless enjoined by the Court, Defendants will continue to misappropriate, disclose, and use for their own benefit Greater Oceans' trade secret information causing irreparable harm to Greater Oceans.  Because no remedy at law adequately compensates Greater Oceans for the harm caused by Defendants' unlawful acts Greater Oceans seeks and is entitled to preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information.

## SECOND CLAIM FOR RELIEF

**(Misappropriation of Trade Secrets in Violation of Cal. Civ. Code § 3426.1 *et seq.*)**

50.     Plaintiff incorporates by reference and re-alleges each and every one of the preceding paragraphs as though fully set forth herein.

51.     Greater Oceans owns and possesses certain confidential, proprietary and trade secret information, including, but not limited to customer contracts and pricing data, product protocols, and strategic plans; and Defendants are "Persons" under Cal. Civ. Code § 3426.1(c).

52.     The confidential, proprietary, and trade secret information at issue relates to products and services used, sold, shipped and ordered in, or intended to be used, sold, shipped and ordered in, interstate commerce by Plaintiff.

53.     This confidential, proprietary, and trade secret information derives independent economic value, both actual and potential, from not being generally known to others who could obtain economic value from its disclosure or use.

54.     Thorstenson misappropriated Greater Oceans' trade secret information in the improper and unlawful manner as alleged herein, then further misappropriated the trade secret information by using it in direct competition with Greater Oceans and by disclosing Greater Oceans' trade secret information to DOES 1-10, including Greater Oceans' vendors, suppliers, partners, and customers.

55.     Defendants misappropriated Greater Oceans' trade secret information by acquiring it from Thorstenson either knowing or having reason to know Thorstenson

acquired such information unlawfully and by improper means, and then using and disclosing Greater Oceans' trade secret information to directly compete against Greater Oceans. Defendants' ability to create competing products with little to no lead time is solely due to the theft and use of Greater Oceans' trade secret information.

56.     As the direct and proximate result of Defendants' conduct as alleged herein, Greater Oceans has suffered damages in an amount to be proven at trial, at least in excess of $400,000.00 and more likely in the millions.

57.     Defendants' misappropriation of Greater Oceans' trade secret information was willful and malicious, further entitling Greater Oceans to recover exemplary damages and its attorneys' fees and costs.

58.     Defendants' use of Greater Oceans' trade secret information is ongoing and unless enjoined by the Court, Defendants will continue to misappropriate, disclose, and use for their own benefit Greater Oceans' trade secret information causing irreparable harm to Greater Oceans.  Because no remedy at law adequately compensates Greater Oceans for the harm caused by Defendants' unlawful acts Greater Oceans seeks and is entitled to preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information.

## THIRD CLAIM FOR RELIEF

### (Breach of Fiduciary Duty and Duty of Loyalty)

59.     Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

60.     As a key consultant of Greater Oceans, Thorstenson owed Greater Ocean his undivided loyalty and was obligated to act with the utmost good faith, and in the best interest of Greater Oceans. Greater Oceans, in turn, was entitled to place its trust and confidence in Thorstenson and expected that he would act with the utmost good faith toward Greater Oceans in carrying out the business of Greater Oceans.  Greater Oceans relied on Thorstenson's presumed loyalty and integrity in the faithful performance of his duties and responsibilities under the IC Agreement, the Consulting

Agreement, and/or the IP Assignment.

61.     During the course of acting as an independent contract to Greater Oceans, Thorstenson breached his fiduciary duty and duty of loyalty by starting or attempting to start a new business to directly compete against Greater Oceans while working on behalf of Greater Oceans.  Thorstenson actively worked against Greater Oceans' business interests while he was under contract to Greater Oceans.

62.     In doing so, Thorstenson acted willfully and maliciously in breach of his fiduciary duty and duty of loyalty to Greater Oceans described above.  By reason of the acts and conduct by Thorstenson, Greater Oceans is entitled to compensatory and punitive damages in an amount to be determined at trial but at least exceeds hundreds of thousands of dollars.

63.     As a result of Thorstenson's flagrant breaches of fiduciary duty and the duty of loyalty while supposedly working as an independent contractor for Greater Oceans, Thorstenson must forfeit all benefits obtained from Greater Oceans during the period of his disloyalty, the exact amount to be determined at trial.

## FOURTH CLAIM FOR RELIEF

### (Breach of the Consulting Agreement)

64.     Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

65.     Thorstenson and Greater Oceans entered into the Consulting Agreement, a binding, valid contract that specified all essential and material terms.

66.     Pursuant to the material and essential terms of the agreement, Thorstenson agreed not to disclose or use any of Greater Oceans' confidential information—including its trade secrets.  For example, the Consulting Agreement provided that the Parties "shall enter into a Confidential Information and Invention Assignment Agreement (the 'CIIA'), on or about the Effective Date, regarding the parties' confidentiality obligations, company's ownership of inventions related to the Services, and other matters."

67.     Greater Oceans has fully performed its duties and obligations under the Consulting Agreement including, but not limited to compensating Thorstenson according to the terms of the Consulting Agreement.

68.     Thorstenson, by acquiring Greater Oceans' confidential and proprietary information, such as the customer pricing models, internal business strategy and plans, could not disclose such information to third parties in willful breach of his obligation under the Consulting Agreement not to disclose Greater Oceans' confidential information and trade secrets.

69.     In using Greater Oceans' confidential information and trade secrets as the basis for Defendants' independent competing business ventures, Defendants have willfully breached their contractual duty not to use any of Greater Oceans' confidential information and trade secrets in disregard and intentionally violation of the Agreement.

70.     As a direct and proximate result of this breach, Thorstenson has caused damage to Greater Oceans in an amount to be determined at trial, together with interest, costs, and attorneys' fees.

## FIFTH CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations)

71.     Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

72.     Thorstenson and Greater Oceans entered into the IC Agreement, the Consulting Agreement, and the IP Assignment, binding and valid contracts that have all essential and material terms specified, including the contractual duty to avoid conflicts of interest.

73.     Greater Oceans had existing binding and valid contractual relationships with Capewell, Cathay, and QBAS that had all essential and material terms specified, including the EBS product development proposal agreed upon and invoiced to Capewell, the manufacturing proposal agreed upon and purchase orders issued to Cathay, and the exclusive business arrangement and financial terms agreed upon with

QBAS to create tooling and molds for Greater Oceans' new mask and fin products.

74.    With full knowledge of Greater Oceans' contractual relationships with each one and the essential and material terms agreed upon between Greater Oceans and Capewell, Cathay, and QBAS, Thorstenson took the actions set forth herein with the intent to induce and did indeed induce Capewell, Cathay, and QBAS to breach their contractual relationships with Greater Oceans.

75.    Thorstenson's unlawful conduct set forth herein sabotaged Greater Oceans' contractual relations with Cathay, Capewell, and QBAS and prevented Cathay, Capewell, and QBAS each from performing their material obligations owed to Greater Oceans and Greater Oceans' obligations in return, including the EBS product development proposal agreed upon and invoiced to Capewell, the manufacturing proposal agreed upon with and purchase orders issued to Cathay, and the exclusive business arrangement and financial terms agreed upon with QBAS.

76.    As a direct and proximate result of Thorstenson's intentional interference in the contractual relations between Greater Oceans and Capewell, Cathay, and QBAS, Greater Oceans has suffered damages in an amount to be determined at trial, together with reasonable costs and attorneys' fees.

### SIXTH CLAIM FOR RELIEF

**(Unfair Competition in Violation of Cal. Bus. & Prof. Code, § 17200 *et. seq.*)**

77.    Plaintiff incorporates by reference each and every one of the preceding paragraphs as though fully set forth herein.

78.    Defendants' misappropriation and unauthorized use of Greater Oceans' trade secret information in order to compete with Greater Oceans constitutes a deceptive, unfair, and fraudulent business practice and unfair competition in violation of Cal. Bus. & Prof. Code, § 17200, *et. seq.*

79.    Upon information and belief, Defendants' deceptive, unfair, and fraudulent business practices were willfully undertaken with full knowledge of the value in Greater Oceans' trade secret information and with the intent to misappropriate

Greater Oceans' trade secret information for their own financial gain.

80.     As a direct and proximate result of the foregoing acts, Greater Oceans has suffered and will continue to suffer significant injuries in an amount to be determined at trial.   Greater Oceans is entitled to all available relief provided for under the California Unfair Business Practices Act, Cal. Bus. & Prof. Code, § 17200 *et. seq.*, including an accounting and disgorgement of all illicit profits that Defendants made on account of its deceptive, unfair, and fraudulent business practices. Furthermore, because there has no adequate remedy at law for Defendants' ongoing unlawful conduct, Greater Oceans is entitled to injunctive relief prohibiting Defendants from unfair competition.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment in its favor and against Defendants Eric Thorstenson and DOES 1-10 as follows:

a.     An award of compensatory damages for actual loss and unjust enrichment caused by the misappropriation of Greater Oceans' trade secret information, or, in the alternative, compensatory damages caused by the misappropriation measured by imposition of liability for a reasonable royalty for Defendants' unauthorized disclosure or use of the trade secret information;

b.     An award of exemplary damages in an amount equal to treble the amount of the compensatory damages awarded;

c.     An award of Greater Oceans' reasonable attorneys' fees and costs;

d.     A preliminary and permanent injunction (i) prohibiting Defendants from using, accessing, disclosing, or continuing to possess Greater Oceans' trade secret information, and (ii) ordering the return of Greater Oceans' trade secret information; and

e.     All other relief that the Court may deem just and proper.

**COMPLAINT FOR COMPENSATORY AND PUNITIVE DAMAGES, EQUITABLE RELIEF**

Dated:        December 15, 2020        BLAKELY LAW GROUP


                                        By:      */s/ Brent H. Blakely*_____
                                              Brent H. Blakely
                                              Mark S. Zhai
                                              ***Attorneys for Plaintiff***
                                              ***Greater Oceans, Inc.***


## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff Greater Oceans, Inc. hereby demands a trial by jury as to all claims in this action so triable.


Dated:        December 15, 2020        BLAKELY LAW GROUP


                                        By:      */s/ Brent H. Blakely*_____
                                              Brent H. Blakely
                                              Mark S. Zhai
                                              ***Attorneys for Plaintiff***
                                              ***Greater Oceans, Inc.***

# EXHIBIT A



# INDEPENDENT CONSULTANT AGREEMENT

This Independent Consultant Agreement (this "Agreement") is made as of June 4th, 2019 (the "Effective Date"), by an between Greater Oceans, Inc. dba Third Eye ("Client"), and Eric Thorstenson, an independent contractor ("Consultant").

Whereas, Client desires to retain Consultant, and Consultant desires to be retained by Client, pursuant to the terms and conditions hereinafter set forth.

Now, therefore, in consideration of the mutual promises herein contained, Client and Consultant agree as follows:

1.     <u>Engagement of Services:</u>    Consultant will provide services as an Independent Contractor to Client for the development of certain products and services which will be solely owned by Client.

2.     <u>Compensation:</u>    Consultant will be paid a rate of $100.00/hour. Payment will be made upon invoice submission.

3.     <u>Expenses:</u>    Client will reimburse Consultant for any reasonable business expenses incurred by Consultant that relate to the performance of Consultant's services hereunder (including, without limitation, all travel and related expenses).

4.     <u>Terms:</u> The terms of this Agreement shall begin on the Effective Date for a period of six (6) months.

In witness whereof, the parties hereto have executed this Agreement as of the Effective Date.

**CLIENT:**    **Greater Oceans Inc. dba Third Eye**    by:

Name: Jeff Hornbaker
Title: President

**CONSULTANT:**

Name: Eric Thorstenson

## Fwd: Eric Thorstenson Consulting Agreement

To jeffthirdeye@hotmail.com

Best,

Jeff Hornbaker



thirdeyeworld.com

---------- Original Message ----------
From: Eric Thorstenson <eric@thirdeyeworld.com>
To: jeff <jeff@thirdeyeworld.com>
Date: July 9, 2019 at 12:45 PM
Subject: Eric Thorstenson Consulting Agreement

Agreement between Greater Oceans Corporation and Eric Thorstenson.

The following serves as an agreement between Greater Oceans Corporation DBA Third Eye in California and Eric Thorstenson Consultant.

Eric Thorstenson will perform as a consultant to Third Eye in the form of research and development and design advice for the compensation base of $100/hr officially starting June 4th.

Third Eye will reimburse Eric Thorstenson for all related expenses incurred while performing duties associated with Third Eye within 30 Days of submitting business related expenses.

All IP rights during the course of this consulting agreement will be the sole property of Greater Oceans Inc.

Terms of this agreement are for a period of 6 months from this signed and dated agreement between Greater Oceans and Eric Thorstenson.


Eric Thorstenson                                                                 Jeff Hornbaker
Consultant                                                                          President, Greater Oceans


_____

_____



# EXHIBIT B

E.T.

MAY 28, 2019

## CONSULTING AGREEMENT

This Consulting Agreement (the "**Agreement**") is made and entered into as of [DATE] (the "**Effective Date**") by and between Greater Oceans, Inc., a California corporation ("**Company**") and Eric Thorstenson, an individual ("**Consultant**").

**1.      Engagement of Services.**  This Agreement provides the terms and conditions upon which Consultant will provide services to Company for the development, promotion, marketing and maintenance of Company's products and services (the "**Services**") during the Term.

**2.      Confidentiality and Ownership.**  Company and Consultant shall enter into a Confidential Information and Invention Assignment Agreement (the "**CIIA**"), on or about the Effective Date, regarding the parties' confidentiality obligations, Company's ownership of inventions related to the Services, and other matters as set forth therein.

**3.      Independent Contractor Relationship.**  Nothing contained herein shall constitute a partnership, joint venture, agency or employer/employee relationship between Consultant and Company.   Consultant is an independent contractor.   Unless required by applicable law, Company shall not withhold any federal, state or local income or other employment taxes from the compensation payable to Consultant hereunder.   Consultant shall be responsible for the payment of all federal, state and local income and other taxes arising from this Agreement. Further, neither party has any right or power under this Agreement to create any obligation, express or implied, on behalf of the other party or to act for or bind the other party in any manner.

**4.      Term and Termination.**

        **a.**      This Agreement shall commence on the Effective Date and continue until terminated as set forth below (the "**Term**").

        **b.**      Either may terminate this Agreement for convenience upon thirty (30) days' prior written notice to the other party. Upon any termination of this Agreement, each party shall be released from all obligations and liabilities to the other occurring or arising after the effective date of such termination, except that any termination of this Agreement shall not relieve either party of its obligations that are intended to survive the termination of this Agreement (including, without limitation, any of Company's payment obligations to Consultant), nor shall any such termination relieve either party from any liability arising from any breach of this Agreement.

**5.      Compensation.**

        **a.**      Company will reimburse Consultant for any and all reasonable costs and expenses incurred by Consultant in connection with the Services (including, without limitation, Consultant's travel costs and expenses) provided such costs and expenses have been approved by Company.

**b.** In consideration for the Services, Consultant shall be paid at a rate of one hundred dollars ($100) per hour. At the end of each calendar month during the Term, Consultant will provide Company with an invoice for the work rendered during such month, including a general description of the work performed, the number of hours worked by Consultant to perform such work (with partial hours worked recorded in six-minute increments), and the total compensation due for such month. Company will pay Consultant within fifteen (15) days after receipt of each such invoice.

**6.    General Terms.**

**a.** This Agreement and the CIIA constitute the complete agreement between Company and Consultant with respect to the subject matter herein and therein, superseding any other previous oral or written agreements, arrangements or understandings between the parties. This Agreement may not be amended except by a written instrument signed by both parties. This Agreement shall be governed by the laws of the State of California. The exclusive jurisdiction for any legal proceeding regarding this Agreement shall be in the state or federal courts of Orange County, California, and the parties expressly agree that jurisdiction and venue are proper in said courts. The prevailing party in any action to enforce this Agreement shall be entitled to an award of its costs and fees (including reasonable attorney's fees) in connection with any such mediation, arbitration and/or litigation or dispute.

**b.** Any notices required or permitted hereunder may be given to the appropriate party at the address specified below or at such other address as the party shall specify in writing. Notices shall be deemed effective upon receipt regardless of the method of transmittal or, if sent by certified mail, postage prepaid and return receipt requested, to the address set forth below, three (3) days after the date of mailing.

**c.** The division of this Agreement into articles, sections and subsections and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement.

**d.** This Agreement is not assignable by Consultant without the prior written consent of Company, which consent may be withheld in Company's sole and absolute discretion.

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the Effective Date.

**GREATER OCEANS, INC.**                    **CONSULTANT**

Signed:                                     Signed:

P r i n t   Jeffery Hornbaker              P r i n t   Eric Thorstenson
Name:                                       Name:

Title:       President

# EXHIBIT C

## INTELLECTUAL PROPERTY ASSIGNMENT

WHEREAS, **Eric Thorstenson** ("Assignor") is the sole owner of all proprietary and intellectual property rights, including copyrights and patents, in the concepts and technologies known and described as the "*Inflatable Water Safety Harness With Load Bearing Structure*," and more specifically described in the United States non-provisional patent application filed on or about February 1, 2020 (referred to collectively herein as the "Invention"), and all right, title and interest in and to any granted patents or registrations to the Invention;

WHEREAS, **Greater Oceans Inc.**, a California corporation, doing business as **Third Eye**, and having offices at 33061 Santiago Drive, Dana Point, California 92629 ("Assignee" or "Third Eye") desires to acquire the complete ownership of all proprietary rights, title and interest in the Invention, including, but not limited to, any patent application rights, potential patent rights, copyrights, and trade secrets relating to the Invention; and

WHEREAS, **Third Eye** agrees to assume full responsibility to pay all intellectual property registration costs, fees and expenses, including any patent application, prosecution, issuance, and maintenance fees and costs relating to the Invention.

THEREFORE, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and other good and valuable consideration, Assignor, hereby assigns and transfers to Assignee the entire right, title and interest in the Invention, including:

(1) all applications for patents (including divisionals, continuations in whole or part, or substitute applications) in the United States or any foreign countries whose duty it is to issue such patents (collectively, the "Applications");

(2) all patents which may issue or be granted based upon any of the Applications in the United States or any foreign countries whose duty it is to issue such patents (collectively, the "Patents");

(3) any reissues, reexaminations, and/or extensions of any of the Applications or Patents;

(4) all copyrights, trade secrets, and all patents which may be granted on the Invention; and

(5) all priority rights under the International Convention for the Protection of Industrial Property for every member country.

Assignor agrees to cooperate with Assignee and to execute and deliver all papers, instruments and assignments as may be necessary to vest all right, title and interest in and to the intellectual property rights to the Invention in Assignor.

Assignee agrees to assume full responsibility to pay all intellectual property registration costs, fees and expenses, including any patent application, prosecution, issuance, and maintenance fees and costs relating to the Invention.

Date: February 18, 2020

_____
Eric Thorstenson (Assignor)

3

Scanned with CamScanner

# EXHIBIT D



## INDEPENDENT CONSULTANT AGREEMENT

This Independent Consultant Agreement (this "**Agreement**") is made as of May 9th, 2019 (the "**Effective Date**"), by and between Capewell Aerial Systems LLC, a Virginia limited liability company ("**Client**"), and Greater Oceans, Inc., d/b/a THIRD EYE, a California corporation ("**Consultant**").

WHEREAS, Client desires to retain Consultant, and Consultant desires to be retained by Client, pursuant to the terms and conditions hereinafter set forth.

NOW, THEREFORE, in consideration of the mutual promises herein contained, Client and Consultant agree as follows:

1.      Engagement of Services.  This Agreement provides the terms and conditions on which Consultant will provide the services described in one or more work orders (each, a "**Work Order**") in the form attached hereto as Exhibit A and incorporated herein by reference (the "**Services**").  Consultant will perform the Services designated in each Work Order, and each Work Order will be made a part of this Agreement as if fully included within its body.  Consultant will be compensated in accordance with the terms contained in each Work Order, and each Work Order will identify any other specific terms and conditions related to the Services, including without limitation, the term or duration of such Services and ownership of certain intellectual property to the extent deliverables are part of the Services under such Work Order.  Changes in the scope of any Services being performed under this Agreement and each applicable Work Order will be made only if agreed to in writing in the form of an amendment to such Work Order executed by authorized representatives of both parties.

2.      Expenses. Client will reimburse Consultant for (or directly pay for) any reasonable business expenses incurred by Consultant that relate to the performance of Consultant's services hereunder (including, without limitation, all travel and related expenses).

3.      Relationship of Parties. The parties acknowledge that Consultant is an independent contractor, and Consultant is neither an employee of, partner of, nor joint venture partner with, Client.  Unless required by applicable law, Client shall not withhold any federal, state or local income or other employment taxes from the compensation payable to Consultant hereunder.  Consultant shall be responsible for the payment of all federal, state and local income and other taxes arising from this Agreement.  Consultant shall have no authority to bind Client in any transactions with any third party.  Consultant shall not be required to devote any particular amount of time and attention to the

performance of Services but shall devote only so much of its time and attention as it deems reasonable or necessary for such purposes.  Client recognizes that Consultant may now or in the future provide consulting and other services similar to those provided to Client herein to other companies that may or may not conduct business and activities similar to those of Client, provided that, during the term of any outstanding Work Order, Consultant will notify Client of any direct competitors of Client to which Consultant provides services.

4.    Term / Termination.   The Term of this Agreement shall begin on the Effective Date and continue, unless terminated earlier in accordance with this Agreement, until the one (1) year anniversary of such date (the "**Initial Term**"). The Initial Term shall automatically extend for successive one (1) year periods (each a "**Renewal Term**," and collectively with the Initial Term, the "**Term**"), unless either party provides written notice of its intent to not renew with no less than thirty (30) days' notice prior to the expiration of the Initial Term or the then current Renewal Term.  In addition, either Consultant or Client can terminate this Agreement or any Work Order at any time by providing ninety (90) days' advance written notice to the other party. Those sections of this Agreement that should logically survive termination or expiration of this Agreement will survive termination or expiration of this Agreement. Notwithstanding anything to the contrary, if the term of any Work Order continues beyond the Term, such Work Order and the Services provided thereunder shall remain subject to the terms and conditions set forth herein.

5.    Confidentiality.

    (a)    Each party, during the Term, will have access to and become familiar with various trade secrets and confidential information of the other party and its affiliates, including without limitation, financial, operational and development information, employee data, vendor, client and supplier information, designs, intellectual property, technical information, samples and prototypes, products, and services (all of such items contained in any tangible or electronic form herein referred to as the "**Confidential Information**").

    (b)    Notwithstanding the foregoing, Confidential Information shall not include (i) information which is or becomes generally available to the public other than as a result of an unauthorized disclosure by the receiving party, (ii) information that becomes available to the receiving party on a non-confidential basis from a source not bound by an obligation of confidentiality to the disclosing party, (iii) information that is independently developed by the receiving party without use of the disclosing party's Confidential Information, and (iv) information that was known to the receiving party prior to disclosure by the disclosing party.

    (c)    The receiving party shall hold in strict confidence and not disclose any of the disclosing party's Confidential Information, directly or indirectly, nor use the disclosing party's Confidential Information in any way, either during the Term or at any

time thereafter, except as required in the course of the receiving party's performance under this Agreement or as required by law.   All Confidential Information whether prepared by the disclosing party or otherwise coming into receiving party's possession, shall remain the exclusive property of the disclosing party.   Upon termination of this Agreement, all Confidential Information of the disclosing party in the receiving party's custody or control shall be immediately returned to the disclosing party, and the receiving party shall destroy all records, notes, compilations and other documentation (on all forms of media) that in any way refer to, relate to or contain Confidential Information of the disclosing party.

(d)     Nothing in this Agreement shall (i) prevent Consultant from performing the same or similar services for any other client or in any industry in which Client is involved, provided that Consultant does not disclose any Confidential Information of Client; or (ii) prohibit or limit Consultant's use of ideas, concepts, know-how, methods, code, techniques, skill, knowledge and experience that were used, developed or gained in connection with this Agreement, except with regard to any Confidential Information of Client. Client acknowledges that it is possible that Consultant may now or in the future work with third parties whose interests vary with Client's interests and waives any claims that may result from such conflict.

6.     Notices and Statements.   All notices to either party may be sent by certified U.S. Postal mail service, return receipt requested to the address set forth below or at such other address as each party may designate from time to time.   The date of receipt of any such statement, payment or notice shall be deemed the date of the giving of notice thereof.

**To Consultant:**                    **Greater Oceans, Inc., d/b/a THIRD EYE**
                                      33061 Santiago Dr.
                                      Dana Point, CA 92629

**To Client:**                        **Capewell Aerial Systems LLC**
                                      4298 JEB Stuart Hwy
                                      Meadows of Dan, VA 24120
                                      Attention: John Marcaccio

7.     Binding Nature of Agreement.   This Agreement shall be binding upon and inure to the benefit of each of the parties and their respective successors, representatives, and assigns. Neither party may assign this Agreement without the prior written consent of the other party.     This Agreement supersedes all prior negotiations, understandings, and agreements between the parties with respect to the subject matter hereof, all of which are canceled, and the parties acknowledge and agree that neither shall rely on or has relied on any representations, statements, projections or promises in connection with this Agreement, or the subject matter hereof, not specifically contained herein.   Except as

otherwise specified, this Agreement may not be canceled, altered, modified or amended except by an instrument in writing signed by the parties.

8.      Applicable Law.  This Agreement shall be governed by, and interpreted under, the laws of the State of California without reference to principles of conflict of laws. Any controversy arising out of this Agreement shall be resolved without a jury in a federal or state court of competent jurisdiction located in the State of California, County of Orange. The parties consent to the exclusive jurisdiction of such courts, waive any objection to such venue and waive trial by jury. Legal process or notices may be served on either party by certified mail, return receipt requested or any other method permitted by the rules of the court in which an action is commenced at the address of each party set forth above. This Agreement shall be construed without regard to the party on whose behalf it was drafted.

9.      No Waiver.    Failure of either party at any time to insist upon the strict performance of any term, condition or obligation contained in this Agreement shall not be deemed a waiver of its right at any time thereafter to insist upon strict performance.

10.     Counterparts.  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement. The parties agree that facsimile, electronically signed, or electronic signatures may substitute for and have the same legal effect as an original signature.

11.     Attorneys' Fees.  In any arbitration, litigation or other proceeding by which one party either seeks to enforce this Agreement or seeks a declaration of any rights or obligations under this Agreement, the non-prevailing party shall pay the prevailing party's reasonable attorneys' fees and other costs.

12.     Limitation of Liability.   NEITHER PARTY SHALL BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, INDIRECT, EXEMPLARY, SPECIAL OR PUNITIVE DAMAGES (INCLUDING LOST PROFITS OR LOSS OF BUSINESS), REGARDLESS OF WHETHER THE CLAIM GIVING RISE TO SUCH DAMAGES IS BASED UPON BREACH OF WARRANTY OR CONDITION, BREACH OF CONTRACT, STRICT LIABILITY, NEGLIGENCE OR OTHER THEORY, EVEN IF A PARTY HAS BEEN ADVISED OF THE POSSIBILITY THEREOF. EXCEPT WITH RESPECT TO CLIENT'S PAYMENT OBLIGATIONS UNDER THIS AGREEMENT, IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR DAMAGES UNDER THIS AGREEMENT IN EXCESS OF THE TOTAL FEES PAID BY CLIENT TO CONSULTANT.

*[Signature page follows]*

4

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**CLIENT:**

**Capewell Aerial Systems LLC**

By: _____

Name: John Marcaccio

Title:   CEO

**CONSULTANT:**

**Greater Oceans, Inc., d/b/a THIRD EYE**

By: _____

Name: Jeff Hornbaker

Title:   President